UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

VITALIY MIKINBERG,

                          Plaintiff,

       -v-

BEMIS COMPANY, INC.,

                        Defendant.

------------------------------------------------------------X

12 Civ. 850 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiff filed this action on February 2, 2012, in connection with the termination of his employment with defendant. (Compl., ECF No. 1.) After a period of discovery, defendant moved for summary judgment on September 4, 2012. (Mot. Summ. J., ECF No. 20.) That motion became fully briefed on September 25, 2012. (Def.'s Reply Mem. Law Supp. Mot. Summ. J., ECF No. 34.) For the reasons set forth below, the Court GRANTS defendant's motion.

I.   BACKGROUND

Plaintiff has agreed with the vast majority of facts contained in defendant's Rule 56.1 Statement of Undisputed Material Facts. (Compare Def.'s Rule 56.1 Statement Undisputed Material Facts, ECF No. 21 ("DSOF"), with Pl.'s Rule 56.1 Counterstatement Undisputed Material Facts, ECF No. 30 ("PCSOF").) The pertinent facts are as follows:

1

Bemis Company, Inc. ("Bemis"), purchased Alcan Packaging Food Americas ("Alcan Packaging") in March 2010. (PCSOF ¶ 1.) Plaintiff Vitaliy Mikinberg had been employed by Alcan Packaging since 1992, initially in a maintenance position. (Id.) When Bemis purchased Alcan Packaging, Mikinberg completed an application to Bemis in which he applied for continued employment. (Id. ¶ 2.) Bemis subsequently offered plaintiff a position with the company contingent on the completion of its acquisition of Alcan Packaging. (Id. ¶ 3.) Approximately six months after his contingent job offer, Bemis closed on its acquisition of Alcan Packaging, and Mikinberg became a Bemis employee. (Id. ¶¶ 3-4.) He was sixty-one years old at the time. (Id. ¶ 4.)

Mikinberg began his tenure as a Bemis employee as the "Maintenance Manager at the Edgewood facility." (Id. ¶5.) Edgewood manufactures labels for carbonated beverages and water products. (Id.) Among plaintiff's responsibilities was "to provide day-to-day leadership to the engineering and maintenance functions at the Edgewood plant." (Id. ¶ 6.) In July 2011, plaintiff's title changed to "Engineering and Maintenance Manager," but his functional responsibilities remained the same. (Id. ¶ 7.)

Throughout the time that he was employed by Bemis, plaintiff reported to Andre Kralj, the Edgewood plant manager. (Id. ¶ 8.) Kralj, in turn, reported to Thomas DeColfmacker, Vice President of Operations. (Id. ¶ 9.) Igor Rakhmanskiy, a Maintenance Supervisor, and Frantz Vilme, a Maintenance Technician, both reported to plaintiff during the same period of time. (Id. ¶¶ 10-11.)

The manufacturing process at the Edgewood plant involves some large scale equipment, which has led Bemis to place particular emphasis on safety. (Id. ¶ 12.) Plaintiff agree at his deposition that, at Bemis, "safety is first." (Id.) Employees at the Edgewood facility "were required to follow safety procedures called 'EHS Management of Change.'" (Id. ¶ 13.) The purpose of these procedures is to ensure that environmental, health, and safety issues are considered in connection with any "Non-Routine Work Event." (Id. ¶ 14.)

A "Non-Routine Work Event" is any "event (movement of equipment, larger scope repairs and maintenance to the equipment or building) that requires activities that 'can create an increase[d] opportunity for risk to the individuals [who] carry out the task.'" (Id. ¶ 15.) A "Safe Work Permit" must be completed before an employee carries out a non-routine task. (Id. ¶ 16.)

On August 26, 2011, Hurricane Irene was moving up the East Coast. (Id. ¶ 17.) The Edgewood facility was making plans to deal with the hurricane's expected impact. (Id.) That same day, plaintiff sent his boss, Kralj, an email in which he stated that, as they had discussed, "he was 'planning to take three working days of vacation,' from Monday, August 29, through Wednesday, August 31, 2011." (Id. ¶ 18.) According to plaintiff, he had discussed these plans with Kralj earlier in the week, and Kralj told plaintiff that he had no problem with plaintiff's vacation, as long as Rakhmanskiy covered for him. (Id. ¶ 19.)

At his deposition, plaintiff conceded that he understood that either he or Rakhmanskiy was required to be at the plant whenever maintenance was

3

performed — even if it occurred on a Saturday. (Id. ¶ 20.) On Friday, August 26, 2011, plaintiff knew that maintenance was scheduled to occur the next day, a Saturday. (See Garland Aff. Ex. 2 at 137:14-138:6, 157:8-11, ECF No. 25 ("Mikinberg Depo.").)[1]

Prior to 5:00 p.m. that Friday, Rakhmanskiy informed plaintiff that he lived in an area that was subject to mandatory evacuation as a result of Hurricane Irene. (See DSOF ¶ 22; PCSOF ¶¶ 22-22.4.) On Saturday, April 27, 2011, Rakhmanskiy called plaintiff at 8:00 a.m. to inform him that he would not be at the Edgewood facility that day because he was evacuating the area. (PCSOF ¶ 23.) Plaintiff asked Rakhmanskiy to call Kralj "or do something." (PCSOF ¶ 24.)

Plaintiff did not go to the Edgewood facility to oversee the maintenance on August 27, 2011. (See DSOF ¶ 25; PCSOF ¶ 25.) In the early-to-mid afternoon of that day, he called Vilme at the plant. (PCSOF ¶ 26.) Prior to the maintenance procedure performed on Saturday, August 27, 2011, a distillation unit had been leaking for some time. (Id. ¶ 28.) Plaintiff was the employee responsible for correcting the leakage in the unit and had been a part of earlier efforts and discussions to get it fixed. (Id. ¶ 29.) Plaintiff knew that Rakhmanskiy was designing a safety test and had been the one who discussed the details of the procedure that was going to occur on Saturday with Vilme. (Id. ¶ 30.)

---

[1] Plaintiff disputes this by pointing to facts suggesting that he was not the person who assigned the maintenance tasks to be performed Saturday and that he expected Rakhmanskiy to supervise any maintenance that was to occur. (See PCSOF ¶¶ 21-21.4.) None of these facts undermines plaintiff's own deposition testimony that he understood Saturday was to be a "maintenance day." (Mikinberg Depo. 138:2.)

4

At approximately 3:00 p.m. on Saturday, an explosion occurred while Vilme was performing a pressure test of the distillation unit. (Id. ¶ 27.) As a result of the explosion, Vilme suffered corneal burns and abrasions, a cut lip, contusions to the right side of his face, and a broken finger. (Id. ¶ 31.) He also fell four feet and was sprayed with a vapor of the solvent. (Id.)

Early Saturday evening, plaintiff called Kralj and reported that there had been an accident. (Id. ¶ 32.) Bemis then conducted two investigations into the incident. The first investigation began the very next Monday, August 29, 2011, by the EHS Manager for the facility. (Id. ¶ 33.) This report concluded that "[t]here was no supervision present on site at the time of the accident" and that this was "not normal operating condition." (Id. ¶ 34.) The report also noted that a "safe work permit" had not issued for the procedure. (Id. ¶ 35.)

On September 20, 2011, just a few weeks after the incident and first investigation, plaintiff met with Linda Elkin, Edgewood's human resources representative, and Kralj. (Id. ¶ 42.) They asked plaintiff whether he understood the breakdown in procedures that led to the accident and whether he accepted any sense of ownership for what occurred. (Id.) Plaintiff asserted then and continues to assert that Rakhmanskiy and Vilme were responsible for the incident. (Id. ¶ 45.) On September 21, 2011, Elkin and Kralj met with DeColfmacker to debrief him on their meeting with plaintiff. (Id. ¶ 44.) Plaintiff does not dispute that Kralj stated that he could not recommend plaintiff's continued employment because he did not believe that plaintiff understood the seriousness of the events, the grave


consequences that could have transpired, and plaintiff's role and accountability. (Compare DSOF ¶ 45, with PCSOF ¶ 45.)

On September 23, 2011, DeColfmacker, Kralj and Elkin met with plaintiff to inform him that his employment was being terminated. (PCSOF ¶ 48.) Bemis has not hired anyone to replace plaintiff, although Rakhmanskiy has assumed plaintiff's responsibilities. (Id. ¶ 49.)

To support his allegations of age discrimination, plaintiff points to testimony from his own deposition and that of Vilme suggesting that plaintiff was called "old man." (Id. ¶¶ 47.6-47.8.) The only specific instance of this that plaintiff recalled was when DeColfmacker called plaintiff "old man" in 2009, though he suggests it occurred continually. (Morelli Decl. Ex. A 110:6-112:20, ECF No. 28.) Plaintiff could not recollect any other details about the instance(s) in which DeColfmacker referred to him as an "old man." (Id.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment may not be granted unless all of the submissions taken together show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In making that determination, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its

6

favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010) (citing LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005)).

Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must set out specific facts showing a genuine issue for trial and cannot merely rely on allegations or denials in the pleadings. See Fed. R. Civ. P. 56(c), (e); Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted). A non-movant's facts "must be material and of a substantial nature, not fanciful, frivolous, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (citation omitted); see also Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").

## III. FEDERAL, STATE, AND LOCAL NON-DISCRIMINATION LAWS

Plaintiff asserts age discrimination claims under the ADEA as well as the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). (Compl. ¶ 2, ECF No. 1.)

7

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); see also Gross, 557 U.S. at 176. The Supreme Court recently clarified that the words "because of," in the ADEA, require age to have been "the 'reason' that the employer decided to act." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). In other words, age must be "the 'but-for' cause of the employer's adverse decision." Id.

In cases such as this, where plaintiff does not put forth direct evidence of discrimination, the Court's analysis of an ADEA claim proceeds under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801 (1973). Under McDonnell Douglas, plaintiff must first make out a prima facie case of discrimination by showing: "(1) that [plaintiff] was in the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 107 (2d Cir. 2010) (citing Carlton v. Mystic Trans., Inc., 202 F.3d 129, 134 (2d Cir. 2000)). Only the second and fourth elements of the prima facie case of discrimination are in dispute here.

Once plaintiff has carried his initial burden, defendant may come forward with a showing of a legitimate, non-discriminatory reason for the adverse employment action. Id. at 106. Even where the defendant succeeds in rebutting the

8

prima facie case, however, the plaintiff may nevertheless prevail by showing the proffered reason is merely pretextual. See id. It is at this third stage where the Second Circuit has instructed district courts to apply the but-for standard of Gross. Id.

Age discrimination claims under the NYSHRL and the NYCHRL have traditionally been analyzed under the same framework as ADEA claims. See Leibowitz v. Cornell Univ., 584 F.3d 487, 498 n.1 (2d Cir. 2009). Whether they are treated identically at the third stage of the burden-shifting framework after Gross is still an open question. New York State courts have yet to decide whether the NYSHRL still parallels the ADEA after Gross. See DeKenipp v. New York, 949 N.Y.S. 2d 279, 282 (N.Y. App. Div. 2012). Because the Second Circuit has assumed, without deciding, that the Gross standard applies to NYSHRL claims, Gorzynski, 596 F.3d at 105 n.6, this Court will do the same. The Court construes the NYCHRL claims more liberally, however. See Colon v. Trump Int'l Hotel & Tower, No. 10 Civ. 4794, 2011 WL 6092299, at *5 (S.D.N.Y. Dec. 7, 2011). An NYCHRL claim will therefore survive as long as age was a "motivating factor" for the challenged adverse employment action. See id.; Weiss v. JP Morgan Chase & Co., No. 06 Civ. 4402, 2010 WL 114248, at *2-3 (S.D.N.Y. Jan. 13, 2010); see also Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009).

## IV. DISCUSSION

Plaintiff has pointed to no direct evidence of discrimination and has failed to cite facts that would allow a reasonable juror to find that age was a but-for cause of,

9

or even a motivating factor for, his termination. In combination with the record material defendant cites in support of its legitimate, nondiscriminatory reason for terminating plaintiff, that failure is fatal to plaintiff's claims. Accordingly, the Court need not (and does not) reach the question of whether plaintiff has made out a prima facie case of discrimination. See Attard v. City of New York, 451 F. App'x 21, 23-24 (2d Cir. 2011) (citing Graves v. Finch Pruyn & Co., 457 F.3d 181, 188 (2d Cir. 2006)).

The undisputed facts leave no doubt that the circumstances of plaintiff's termination related in large part (if not entirely) to plaintiff's actions in connection with the explosion of the Edgewood facility's distillation unit on August 27, 2011. It is undisputed by competent evidence that:

- In March 2010, plaintiff became a Bemis employee at age 61 (PCSOF ¶ 4);
- Plaintiff was the person to whom both Rakhmanskiy and Vilme reported (id. ¶¶ 10-11);
- Plaintiff was expected to provide day-to-day leadership for the engineering and maintenance functions at the Edgewood plant (id. ¶ 6);
- Plaintiff knew that either he or Rakhmanskiy had to be present whenever maintenance was performed at the plant (PCSOF ¶ 20);
- Plaintiff knew that maintenance had been scheduled to be performed on Saturday, August 27, 2011 (Mikinberg Depo. 137:14-138:6, 157:8-11);

- Plaintiff knew his vacation time at the end of August 2011 was acceptable on the condition that Rakhmanskiy covered the maintenance Saturday, August 27, 2011 (PCSOF ¶ 19);

- Before that Saturday, plaintiff knew Rakhmanskiy was subject to mandatory evacuation due to Hurricane Irene (id. ¶ 22);

- Plaintiff knew, by 8:00 a.m. that Saturday, that Rakhmanskiy would not be at work (id. ¶ 23);

- Plaintiff knew, before the explosion, that Vilme was at the Edgewood facility performing maintenance on Saturday (Mikinberg Depo. 156:11-157:19);

- Plaintiff did not go into work that Saturday (see DSOF ¶ 25; PCSOF ¶ 25);

- An explosion occurred while Vilme was performing maintenance, injuring Vilme (PCSOF ¶¶ 27, 31);

- Kralj recommended that plaintiff be terminated, citing plaintiff's conduct in connection with the explosion (id. ¶ 45; Garland Aff. Ex. 12 at 16:19-19:19, ECF No. 25); and

- Plaintiff was terminated on September 23, 2011, less than one month after the explosion (PCSOF ¶ 48).

Against all of this, plaintiff urges that, for the two years preceding the accident, DeColfmacker, Rakhmanskiy, and other, unnamed employees at the plant called him "old man" on a number of occasions. (Id. ¶¶ 47.6-47.8.) He also urges

11

that he was not, in fact, responsible for the accident. (Id. ¶¶ 43-43.15.)[2] He argues blame would be more properly placed on Rakhmanskiy and Vilme, his subordinates.

Even granting plaintiff all reasonable inferences from these facts, no reasonable juror could find that age was "the but-for" cause of plaintiff's termination, or even a motivating factor for it.

Plaintiff cites no facts connecting the "old man" remarks to his termination. He cites no facts suggesting the remarks were made with any negative inflection or were accompanied by any conduct suggesting age bias. Indeed, plaintiff concedes that those remarks began prior to his tenure as a Bemis employee.

Nor does plaintiff cite facts suggesting that Bemis used the explosion as a pretext to terminate plaintiff because of his age. Plaintiff argues that Rakhmanskiy and Vilme (not he) were responsible for the accident, and that he was treated differently from them as a result of his age. But it is undisputed that plaintiff supervised both Rakhmanskiy and Vilme. In that respect, plaintiff was differently situated. See Hirschberg v. Bank of Am., N.A., 754 F. Supp. 2d 500, 516 (E.D.N.Y. 2010). Moreover, defendant has also cited plaintiff's failure to accept responsibility for the accident as a basis for its decision to terminate him. Mikinberg's failure to accept responsibility for the accident would constitute a nondiscriminatory basis for his discharge and is entirely consistent with the undisputed facts of the case as well as his current litigation position.

---

[2] Plaintiff also argues that Kralj had a "strong preference to have a workforce which he perceives is younger," citing only to the following testimony from Kralj's deposition: "Q: How old is [Rakhmanskiy]? A: Don't know. Q: Is he in his 40's? A: Possibly. Q: Has Mr. Rakhmanskiy taken Mr. Mikinberg's responsibilities? A: Yes." The argument that this testimony would permit an inference of age bias is frivolous.

The Court is aware of no federal, state, or local law that prohibits employers from laying blame at the top of the chain of responsibility. See Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 106 (2d Cir. 1989) (noting that "the ADEA does not hand federal courts a roving commission to review business judgments" (quoting Graefenhain v. Pabst Brewing Co., 827 F.2d 13, 21 n.8 (7th Cir. 1987))). Because plaintiff has failed to raise a triable issue of fact that defendant did anything more discriminatory than that, defendant's motion must prevail.

## V. CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is GRANTED.

The Clerk of Court is directed to close the motion at Docket No. 20 and to terminate this action.

SO ORDERED.

Dated:   New York, New York
         January 15, 2013

_____
KATHERINE B. FORREST
United States District Judge